IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLARICE M. GOODWIN, Dependent  )
Widow of James Calvin Goodwin,
Deceased, for herself and all  )
dependent children,
                              )

    PLAINTIFF,
                              )
VS.                              CV-99-H-1876-S
                              )
THE DEXTER CORPORATION,
                              )
    DEFENDANT.

**MEMORANDUM OF DECISION**

The Court has before it the May 1, 2000 motion of defendant Dexter Corporation for summary judgment. Pursuant to the Court's May 3, 2000 order, the motion was deemed submitted, without oral argument, on May 31, 2000.

**I. Procedural History**

Plaintiff Clarice Goodwin, as dependent widow of James Calvin Goodwin, commenced this action on July 20, 1998 by filing a complaint in the Circuit Court of Jefferson County, Alabama alleging, as relevant here, that James Calvin Goodwin's death was wrongful and was proximately caused by the culpable acts of Defendant Dexter.[1] (See Compl. ¶ 1.) Plaintiff contends that

---

[1] Plaintiff originally alleged claims against Emmett Entrekin Jr. and Aggregate Construction Equipment and Supply as

defendant Dexter's alleged conduct constitutes negligent failure to provide a safe place to work, negligent failure to warn the decedent of the dangers inherent in the work he was doing, and negligent operation of their plant.[2] (See Compl. ¶¶ G., H., I.) Defendant Dexter filed an answer on August 28, 1998. (See Def. Dexter's Answer.)

On July 21, 1999, after a non-diverse defendant was dismissed, Dexter Corporation removed plaintiff's action to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (See Def. Dexter's Notice of Removal.)

Defendant's May 1, 2000 motion for summary judgment asserts that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law. (See Def.'s Mot. Summ. J.)

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending motion for summary judgment. On May 1, 2000, defendant filed a

---

well, but plaintiff reached a settlement of her claims against Entrekin and Aggregate and stipulated their dismissal from this action on April 5, 1999. (See Stipulation of Dismissal.)

[2] Although plaintiff also initially alleged wanton behavior on the part of Dexter with respect to these three claims, the wanton allegations were dismissed pursuant to the court's August 30, 2000 pretrial order and in accordance with the plaintiff's intentions as expressed at the August 30, 2000 pretrial conference.

supporting memorandum of law, and on May 10, 2000, defendant submitted evidence[3] in support of the motion. Plaintiff filed an opposing brief and submitted evidence[4] in opposition to the motion on June 14, 2000. On October 11, 2000, defendant filed a supplemental brief in support of the motion for summary judgment.

**II. Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party

---

[3] Defendant submitted the May 1, 2000 affidavit of Wayne Wood with exhibit and excerpts from the May 27, 1999 deposition of Emmett Entrekin, Jr.

[4] Plaintiff submitted the May 1, 2000 affidavit of Wayne Wood with exhibit; excerpts from the May 27, 1999 deposition of Emmett Entrekin, Jr.; and the June 14, 2000 affidavit of Dr. James R. Dobbs with exhibit.

has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine

4

issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. See Fitzpatrick, 2 F.3d at 1115-16.

If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[5]

On April 1, 1998, the decedent, James Calvin Goodwin, was employed by Security Technical Services, Inc., and assigned to work as a security guard at Dexter Corporation's plant pursuant to a contract entered into on September 1, 1995 between Dexter and Security Technical. (See Aff. of Wayne Wood 1-2.) Goodwin's primary job responsibility was to insure that all vehicles entering the Dexter plant had a legitimate purpose at the plant and to authorize vehicles to proceed into the facility after

---

[5] If facts are in dispute, they are stated in the manner most favorable to the plaintiff. See Fitzpatrick, 2 F.3d at 1115.

6

obtaining all required information from the driver. (See Aff. of Wayne Wood 2.)  Goodwin was stationed at the entrance of the Dexter facility at a guard shack.  (See Aff. of Wayne Wood 2.)

Pursuant to the September 1, 1995 contract between Dexter and Security Technical, Security Technical specifically warranted that it was responsible for properly training their employees who were assigned to work on Dexter's premises, and Security Technical reserved the exclusive right to select the security guard personnel assigned to Dexter's facility.  (See Aff. of Wayne Wood 2.)

On April 1, 1998, Goodwin was killed after being struck by a flatbed truck which was operated by Emmett Entrekin, Jr., a truck driver employed by Aggregate Construction Equipment and Supply who had been driving trucks for nineteen years at the time of the accident.  (See Dep. of Emmett Entrekin, Jr. 10-11, 21-24, 37-38.)  On the morning of April 1, 1998, Aggregate instructed Entrekin to pick up a piece of equipment called an "Uno" from the Dexter facility.  (See Dep. of Emmett Entrekin, Jr. 23-25.)  When Entrekin arrived at Dexter, he entered through an open wire gate and observed a sign that stated, "Don't enter without appointment."  (See Dep. of Emmett Entrekin, Jr. 26-27.)  Entrekin noticed that there were two stop signs near the guard shack, and he stopped his truck just past the first stop sign.

7

(See Dep. of Emmett Entrekin, Jr. 28-30.)  Entrekin testified that the front of his truck was even with the door to the guard shack which was located to the right of the truck.  (See Dep. of Emmett Entrekin, Jr. 29, 36.)  Entrekin also testified that he observed white crosshatching in the road in the vicinity of the guard shack.  (See Dep. of Emmett Entrekin, Jr. 65-66.)

Entrekin turned off his truck and turned on the "strobe light" on top of the vehicle and the flashers.  (See Dep. of Emmett Entrekin, Jr. 66-67.)  From the raised position of the driver's seat of the truck, Entrekin could only see the roof of the guard shack and did not see Goodwin until he got out of the truck and met Goodwin while walking toward the office.  (See Dep. of Emmett Entrekin, Jr. 30-34.)  Entrekin told Goodwin that he needed to pick up a piece of equipment and gave Goodwin his name and company name.  (See Dep. of Emmett Entrekin, Jr. 34-35.)  Then, Entrekin and Goodwin walked back to the door of the guard shack and Goodwin wrote down Entrekin's information.  (See Dep. of Emmett Entrekin, Jr. 35-36.)

After having obtained all the necessary information, Goodwin told Entrekin to "go ahead."  (See Dep. of Emmett Entrekin, Jr. 35-36.)  Entrekin walked back to his truck, opened the door, "cranked" his truck, released the air brakes, and put the truck in gear.  (See Dep. of Emmett Entrekin, Jr. 69-71, 82-84.)

Entrekin testified that the release of the air brakes makes a hissing noise that can be heard outside the truck. (See Dep. of Emmett Entrekin, Jr. 83-84.) Entrekin also testified that he "always check[s] to make sure nobody is around me before I go anywhere's" and that on the day of the accident, he looked to make sure no one was in front of or behind the truck before he pulled forward. (See Dep. of Emmett Entrekin, Jr. 70, 82.) As Entrekin began to move forward, he felt the trailer "pull" and then saw two other drivers running toward him waving their arms and indicating that Entrekin should stop. (See Dep. of Emmett Entrekin, Jr. 37-40.) Entrekin was seated so high in his truck that he could not see Goodwin standing in front of the truck and did not realize that he had struck Goodwin until he was informed by another driver. (See Dep. of Emmett Entrekin, Jr. 38, 75-76.)

### IV. Applicable Substantive Law and Analysis

As noted earlier, plaintiff's complaint alleges the following claims premised on negligence: (1) negligent failure to provide a safe place to work; (2) negligent failure to warn the decedent of the dangers inherent in the work he was doing; and (3) negligent operation of defendant's plant. (See Compl. ¶¶ G., H., I.) Defendant's motion for summary judgment generally asserts that no genuine issue of material fact exists and that

9

defendant is entitled to judgment as a matter of law. (See Def.'s Mot. Summ. J.)  Defendant specifically avers that plaintiff cannot prove negligence because defendant owed no duty to warn Goodwin of potential dangers that were open and obvious. (See Def.'s Mem. Supp. Summ. J.)

Under Alabama law, negligence is the failure to do that which a reasonably prudent person would have done under the same or similar circumstances.  See Sanders v. Scarvey, 224 So. 2d 247, 250 (Ala. 1969).  In order for plaintiff to prevail on the negligence claims, it is well-settled that plaintiff must prove: (1) defendant owed a duty to Goodwin; (2) defendant breached that duty; and (3) Goodwin's death was caused by defendant's breach. See Sammons v. Garner, 222 So. 2d 717, 718 (Ala. 1969).

Based on the evidence submitted to this court, the court finds that the relationship between Goodwin and Dexter is properly characterized as that of an independent contractor employee/invitee working on the premises of a landowner/invitor.[6] The undisputed facts demonstrate that Security Technical

---

[6] The Alabama Supreme Court has uniformly applied the "business invitee" classification to independent contractors in personal injury and wrongful death claims against premises owners.  See  General Motors Corp. v. Hill, 752 So. 2d 1186, 1187 (Ala. 1999); Bacon v. Dixie Bronze Co., 475 So. 2d 1177, 1180 (Ala. 1985); Beck v. Olin Co., 437 So. 2d 1236, 1239 (Ala. 1983); Glenn v. United States Steel Corp., 423 So. 2d 152, 154 (Ala. 1982).

10

Services, Inc. entered into a contract with Dexter on September 1, 1995 to provide guard services at the Dexter facility. (<u>See</u> Aff. of Wayne Wood.) James Calvin Goodwin was employed by Security Technical and assigned to work as a security guard for the defendant, Dexter. (<u>See</u> Compl.; Pl.'s Mem. Opp'n Summ. J. at 1.) The contract warranted that Security Technical was responsible for properly training Goodwin while on Dexter's premises, and Security Technical retained the exclusive right to select and assign the security guard personnel assigned to Dexter's facility. (<u>See</u> Aff. of Wayne Wood.) The undisputed facts indicate that Goodwin was an invitee because he was an independent contractor employee "on the premises at the express or implied invitation of [Dexter] for a material or commercial benefit to [Dexter]."[7] <u>Bates v. Peoples Sav. Life Ins. Co.</u>, 475 So. 2d 484, 485 (Ala. 1985).

Generally, under Alabama law, a landowner is under a duty to

---

[7] Plaintiff has not offered any evidence to rebut defendant's contention that Goodwin was a business invitee or to suggest that the relationship between Goodwin and Dexter should be characterized in any other manner. In fact, plaintiff never challenged the classification of Goodwin as a business invitee and instead agreed with Dexter that "'[t]he issue in this case is whether a reasonable person in Goodwin's position should have been aware of the potential danger to which he was exposed . . . and whether Dexter could have superior knowledge . . . of that potential danger.'" (<u>See</u> Pl.'s Mem. Opp'n Summ. J. at 5)(quoting defendant's brief and stating that "Dexter correctly raises the pertinent issues in this present action.")

11

use reasonable care and diligence to keep the premises in a safe condition for an independent contractor, or if the premises are in a dangerous condition, to warn an independent contractor of hidden dangers that are known to the landowner but are neither known to the contractor nor capable of being observed by the contractor in the course of ordinary care.[8]  See General Motors Corp. v. Hill, 752 So. 2d 1186, 1187 (Ala. 1999); Bacon v. Dixie Bronze Co., 475 So.2d 1177, 1180 (Ala. 1985).  The duty to keep the premises safe for invitees applies only to hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of reasonable care.  Ex parte Indus. Distrib. Servs. Warehouse, Inc., 709 So. 2d 16, 21 (Ala. 1997).  The Eleventh Circuit reiterated that, "[i]n Alabama, the duty owed by an owner or occupier of premises to an invitee or independent contractor injured by a dangerous instrumentality on those premises is well settled:  '[A]n owner of premises is not responsible to an independent contractor for injury from defects or dangers which the contractor knows of, or ought to know of.'"  See Wallace v.

---

[8] The Alabama Supreme Court noted that the rule of law defining the duty owed by a premises owner to an independent contractor applies equally to those employees of the independent contractor who are engaged in work in furtherance of the contract.  See Glenn v. United States Steel Corp., 423 So. 2d 152 (Ala. 1982).

12

Tri-State Motor Transit, Co., 741 F.2d 375, 376 (11th Cir. 1984) (citing Glenn v. U.S. Steel Corp., 423 So.2d 152, 154 (Ala. 1982)) (emphasis added). Thus, a landowner is not liable for injuries resulting from open and obvious dangers on the premises. See Beck v. Olin Co., 437 So. 2d 1236, 1239 (Ala. 1983).

Once the plaintiff knew or should have known of the danger, "no further duty rest[s] on the landowner; that is, once [the plaintiff] knew of the danger, [the defendant's] duty was discharged even though, armed with that knowledge, [plaintiff] was still arguably subject to an unreasonable risk of harm." Wallace, 741 F.2d at 377. Even if the situation poses an unreasonable risk of harm to the plaintiff, the landowner has no duty to alter or reconstruct known and obvious dangers. See Quillen v. Quillen, 388 So. 2d 985, 989 (Ala. 1980). Thus, the independent contractor assumes all normal or ordinary risks attendant upon the use of the premises. See id.

Although an exception to the general rule will, in certain situations, impose a higher duty on the landowner to provide a "reasonably safe workplace" for the independent contractor, this exception only applies "if the premises owner retains or reserves the right to control the manner in which the independent

13

contractor performs its work."[9]  Pope v. Talladega, 602 So. 2d 890, 891 (Ala. 1992). In this case, plaintiff has presented no evidence to support the existence of a higher duty owed to Goodwin or to suggest that defendant exerted any control over Goodwin's work. Although plaintiff alleged "failure to provide a safe place to work" as one of the claims against defendant Dexter, plaintiff never presented facts to support the existence of a master/servant relationship or to rebut the defendant's argument that the relationship between Dexter and Goodwin was anything other than that of a business invitee to a premises owner.[10]

---

[9] If the right to control the independent contractor is reserved, the relationship changes from one of premises owner/invitor and independent contractor/invitee to that of master and servant. See Thomas v. Pepper Southern Construction, Inc., 585 So.2d 882, 884 (Ala. 1991).

[10] Dexter mistakenly claimed in its "Supplemental Brief in Support of Motion for Summary Judgment" that during the August 30, 2000 pretrial conference, "[t]o the surprise and dismay of Dexter's counsel, the Court accepted the plaintiff's ['failure to provide a safe place to work'] argument and declined to rule on Dexter's motion for summary judgment." (See Def.'s Supplement. Mem. Supp. Summ. J.) Contrary to defendant's assertion that argument about the safe place to work claim "apparently was first made to the Court by plaintiff's counsel while the Court was conducting separate meetings with opposing counsel to explore the possibility of settlement," plaintiff was never allowed to make ex parte argument on that issue to the court. (See Def.'s Supplement. Mem. Supp. Summ. J.) Although the court did raise concerns at the August 30, 2000 pretrial conference about the "safe place to work" claim and whether Dexter had reserved the right to control Goodwin, those issues were only discussed as a tactic to encourage settlement and were only discussed with

Thus, having found that the relationship between Dexter and Goodwin is that of invitor and invitee, the relevant question before this court is whether the undisputed facts indicate that the danger was sufficiently "open and obvious" to relieve Dexter of the duty to warn. A danger may be considered open and obvious and there is no duty to warn if either, (1) the danger is fully known and appreciated by the injured party, or (2) the injured party should have been aware of the condition in the exercise of reasonable care. See Ex parte Indus. Distrib. Servs. Warehouse, Inc., 709 So. 2d 16, 19 (Ala. 1997). In this case, the evidence is undisputed that Goodwin was standing in front of a truck after having told the truck driver to "go ahead," and after the ignition was started, the truck put in gear, and the air brakes released. (See Dep. of Emmett Entrekin 35-36, 66-72, 82-85.) Even without a warning, a reasonable person in the position of Goodwin would have realized the danger of standing in front of a vehicle after having told the driver to proceed. Thus, the court finds that, as a matter of law, the danger of being injured by a moving truck is a plain condition that would have been apparent to a reasonable person,[11] and therefore Dexter is not liable for

---

defendant.

[11] The court notes that the danger should have been especially obvious to Goodwin, who observed vehicles approaching the guard shack, stopping at the designated signs, and proceeding

15

Goodwin's death because Dexter was under no duty to warn Goodwin of that open and obvious danger.[12]

In opposition to defendant's motion for summary judgment, plaintiff argues that summary judgment is only proper on the issue of whether a danger is open and obvious when the undisputed evidence shows that the plaintiff was aware of and appreciated the danger. (See Pl.'s Mem. Opp'n Summ. J. at 5.) In support of this argument, plaintiff relies heavily on the statement in Harding v. Pierce Hardy Real Estate that "'questions of openness and obviousness of a defect or danger and of the plaintiff's knowledge are generally not to be resolved on a motion for summary judgment.'" 628 So. 2d 461, 463 (Ala. 1993) (citing Harvell v. Johnson, 598 So. 2d 881, 883 (Ala. 1992)). Plaintiff's argument is not persuasive to the court, however, because the Alabama Supreme Court has, on numerous occasions, affirmed summary judgment in favor of the defendant when, as in this case, the undisputed facts indicate that the danger was open

---

forward into the plant on a daily basis. (See Aff. of Wayne Wood.)

[12] Because this court finds that Dexter did not owe a duty to warn Goodwin, a discussion of contributory negligence is pretermitted. However, the court notes that even if the finding that the danger was open and obvious is in error and Dexter did owe Goodwin a duty to warn, the undisputed facts described above would also support a finding of contributory negligence on the part of Goodwin and preclude recovery for plaintiff.

16

and obvious. See, e.g., Ex parte Indus. Distrib. Servs. Warehouse, Inc., 709 So. 2d 16, 20 (Ala. 1997) (affirming summary judgment for defendant because "a reasonable person would not walk the length of a large, windowless, and unlighted building and not realize that the way is dark"); Owens v. National Security of Alabama, Inc., 454 So. 2d 1387, 1389-1390 (Ala. 1984) (rejecting the plaintiff's argument that defendant negligently caused the lights to be turned out without warning plaintiff and affirming summary judgment because, as a matter of law, defendant had no duty to warn that the room was dark); Beck v. Olin Co., 437 So. 2d 1236, 1239-1240 (Ala. 1983) (affirming summary judgment for defendant on the issue of open and obvious danger). Cf. Quillen v. Quillen, 388 So. 2d 985, 989 (Ala. 1980) (affirming directed verdict for defendant and holding that danger was open and obvious because plaintiff should have recognized it in the exercise of reasonable care).

Furthermore, plaintiff's reliance on Harding is misguided because Harding is clearly distinguishable from the present case. In Harding, plaintiff tripped over a box of paint cans in defendant's store aisle and testified that,

> he did not see the box he tripped over because he was watching the person in front of him and was scanning the shelves; that, although he saw the boxes piled in the center of the aisle, he did not realize that they posed any special danger to him because he was following

17

>   the path and the person ahead of him; and that he made
>   no special attempt to avoid the boxes while walking the
>   narrow path.

628 So. 2d at 462. The Alabama Supreme Court reversed summary judgment for the defendant in <u>Harding</u> because the evidence was disputed, and plaintiff presented substantial evidence that the paint can box in the pathway was not an open and obvious danger. 628 So. 2d at 463. The circumstances of <u>Harding</u> clearly reveal a factual dispute in that case with respect to both methods of proving a danger is open and obvious: (1) whether the danger was fully known and appreciated by the plaintiff, and (2) whether the plaintiff should have been aware of the danger in the exercise of reasonable care. <u>Id.</u>

In this case, however, the relevant facts are undisputed and there is no evidence to suggest that a reasonable person would not have recognized the danger of standing in front of a vehicle after having told the truck driver to proceed and after the driver <u>thereafter</u> entered and cranked the truck, released the air brakes and put the truck in gear. Even assuming as true plaintiff's contention that Goodwin "did not have any knowledge of the visibility or lack of visibility of the truck drivers who entered the Dexter facility on a daily basis," (<u>See</u> Pl.'s Mem. Opp'n Summ. J. at 5.), the undisputed facts nonetheless demonstrate that a reasonable person would have recognized the danger as open and obvious.

Plaintiff also argues in opposition to defendant's motion for summary judgment that a fact question exists to defeat summary judgment on the issue of whether Dexter's failure to install proper safety devices created a hazardous/dangerous situation for the decedent. (See Pl.'s Mem. Opp'n Summ. J. at 6.) The law in Alabama is clear, however, that once the invitee knew or should have known of the danger, no further duty rests on the landowner, even though the invitee was arguably still subject to an unreasonable risk of harm. See Wallace v. Tri-State Motor Transit, Co., 741 F.2d 375, 377 (11th Cir. 1984). Dexter had no duty to alter or reconstruct known and obvious dangers and Goodwin assumed all normal and ordinary risks attendant upon the use of the premises. See Quillen v. Quillen, 388 So. 2d 985, 989 (Ala. 1980). Thus, the court finds that the opinion of Dr. James R. Dobbs that Dexter could have prevented the accident by installation of certain measures is irrelevant in light of the court's conclusion that the danger was open and obvious. See Ex parte Indus. Distrib. Servs. Warehouse, Inc., 709 So. 2d 16, 18-19 (Ala. 1997) (finding that defendant was not negligent in failing to erect a guardrail when the danger of falling off a loading dock while walking through the warehouse in the dark was open and obvious).

In summary, the Court finds that plaintiff has failed to establish a prima facie case of negligence.  The undisputed facts indicate that the danger was open and obvious and thus defendant had no duty to warn.  Because no material issues of fact remain and because defendant Dexter Corporation is entitled to judgment as a matter of law, summary judgment is appropriate.  A separate order will be entered.

DONE this 25th day of October, 2000.

_____
SENIOR UNITED STATES DISTRICT JUDGE